**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MONTANA**

**BUTTE DIVISION**

| | |
|---|---|
| DAN S. MUSHRUSH,<br><br>              Plaintiff,<br><br>vs.<br><br>MARTEL CONSTRUCTION, INC., a<br>Montana corporation,<br><br>              Defendant. | CV 02-80-BU-CSO<br><br><br>**ORDER DENYING PLAINTIFF'S<br>MOTION TO AMEND JUDGMENT<br>AND FOR NEW TRIAL ON THE<br>ISSUE OF DAMAGES** |

Before the Court is Plaintiff Dan Mushrush's ("Mushrush")
Motion to Amend Judgment and for New Trial on the Issue of
Damages ("*Mushrush's Opening Brief*") (Court's Doc. No. 161).
Mushrush timely filed the combined motion after the Clerk of
Court entered Judgment (Court's Doc. No. 155) following a Jury's
October 7, 2005, verdict (Court' Doc. No. 154) against him and in
favor of Defendant Martel Construction, Inc. ("Martel"),
following trial in Butte, Montana.[1]

Mushrush moves the Court for an Order finding in his favor
and against Martel on the issue of liability.  Mushrush argues
that "the judgment should be amended to find Martel negligent as
a matter of law, [and to find] the absence of comparative

---

[1]The Clerk of Court entered an Amended Judgment (Court's Doc. No. 158) on
October 13, 2005.  Entry of the Amended Judgment did not affect the timeliness
of Mushrush's motion and has no effect on the issues that the Court considers
herein.

negligence by Dan Mushrush." *Mushrush's Opening Brief at 21*; *Mushrush's Reply Brief* (Court's Doc. No. 165) *at 19*. He also requests that the Court issue an Order setting a new trial on the issue of damages. *Id.* In the alternative, Mushrush moves the Court for an Order setting a new trial on all issues, and allowing him "an opportunity to update expert reports and file additional pre-trial motions, on all issues." *Mushrush's Opening Brief at 21*. In making his combined motion, Mushrush relies on Rules 50, 59 and 60 of the Federal Rules of Civil Procedure.[2]

Having reviewed the record, together with the parties' arguments in support of their respective positions, the Court is prepared to rule.[3]

## I.   Mushrush's Rule 50 Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial

Martel objects to Mushrush's combined motion to the extent it is brought under Rule 50.[4] *Martel's Opposition Brief* (Court's

---

[2]All references to rules are to the Federal Rules of Civil Procedure unless otherwise indicated.

[3]This matter's background is thoroughly detailed in the record, and is well-known to the parties and to the Court. Thus, it will not be repeated here. Also, the parties have set forth their arguments in their briefs. The Court has considered all of the arguments, but will not repeat them herein except as necessary for full understanding of the Court's rationale.

[4]Rule 50 provides, in part, as follows:

(a) Judgment as a Matter of Law.

(1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

2

Doc. No. 163) *at 2*.  Martel argues that Mushrush's failure to move for judgment as a matter of law (formerly known as a "directed verdict") at the close of the record precludes his post-trial motion for judgment as a matter of law (formerly known as a "judgment notwithstanding the verdict").  *Id*.

Mushrush concedes that he did not make a motion for judgment as a matter of law at the close of all of the evidence.  *Mushrush's Reply Brief at 1*.  Citing no authority, he argues that his Rule 50 motion is not precluded because "his second motion for summary judgment[5] constitutes a motion for judgment as a

---

(2) Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.

(b) Renewing Motion for Judgment After Trial; Alternative Motion for New Trial. If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment-- and may alternatively request a new trial or join a motion for a new trial under Rule 59. In ruling on a renewed motion, the court may:

(1) if a verdict was returned:
    (A) allow the judgment to stand,
    (B) order a new trial, or
    (C) direct entry of judgment as a matter of law; or
(2) if no verdict was returned:
    (A) order a new trial, or
    (B) direct entry of judgment as a matter of law.

[5]Mushrush is referring to his second Motion for Summary Judgment filed on June 23, 2005 (Court's Doc. No. 97).  Judge Cebull, who was then the presiding judge, denied the motion in an Order filed on July 29, 2005 (Court's Doc. No. 106).  Judge Cebull determined that Mushrush's second summary judgment motion was "in reality nothing more than a motion for reconsideration" of his first motion for summary judgment, which Mushrush withdrew after conceding the existence of some genuine issues of material fact.  Judge Cebull concluded that the second summary judgment motion "cover[ed] the same ground" as the first summary judgment motion that Mushrush withdrew.

matter of law within the meaning of Rule 50 []."  *Id*. *at 2.*

In the Ninth Circuit, it is a procedural prerequisite for a party making a Rule 50 motion for judgment as a matter of law ("JMOL") to have made a motion for JMOL at the close of the evidence, and before submission of the case to the jury.  Janes v. Wal-Mart Stores Inc., 279 F.3d 883, 886-87 (9th Cir. 2002).  Courts in the Ninth Circuit are to construe this requirement strictly.  Id. (citing Farley Transp. Co. v. Santa Fe Trail Transp. Co., 786 F.2d 1342, 1346 (9th Cir. 1986)("the requirement that [a JMOL] motion be made at the close of all the evidence is to be strictly observed")).  The Ninth Circuit has explained that the reason for this requirement is "because [a party] failing to make a motion for JMOL at the close of all the evidence may 'lull the opposing party into believing that the moving party has abandoned any challenge to the sufficiency of the evidence' and thereby prejudice the opposing party."  Id. (quoting Farley, 786 F.2d at 1346).

As Mushrush concedes, he did not make a motion for JMOL at the close of the evidence before submission of the case to the jury.  Therefore, under Ninth Circuit authority, JMOL is not available to him now.  Janes, 279 F.3d at 887.

Further, the Court must reject Mushrush's argument that his previously filed summary judgment motion amounts to a motion for JMOL within Rule 50's meaning.  The Ninth Circuit has held that

"substantial compliance" with the requirement that a JMOL motion
be requested at the close of all the evidence, such as by
previously filing a summary judgment motion, is not enough.  Id.
(citing Image Tech. Serv., Inc. v. Eastman Kodak Co., 125 F.3d
1195, 1212 (9th Cir. 1997)(holding that a motion for summary
judgment does not fulfill the procedural prerequisite of a motion
for JMOL at the close of the evidence)).  Rather, the requirement
is "strictly observed." Id.  Thus, Mushrush's Rule 50 motion for
JMOL or, alternatively for a new trial, will be denied.

## II.   Mushrush's Rule 59 Motion for New Trial or to Alter or Amend Judgment and Rule 60 Motion for Relief from Judgment

### A.   Rule 59 Standard

Under Rule 59, after a jury trial, the trial court may grant
a new trial on all or on some of the issues.[6]  The decision
whether to grant a new trial rests in the trial judge's sound
discretion.  Defenders of Wildlife v. Bernal, 204 F.3d 920, 928-
29 (9th Cir. 2000).

Rule 59 does not expressly list the grounds for which the
trial court may grant a new trial.  However, the Ninth Circuit
has identified certain grounds, possibly relevant to Mushrush's

---

[6]Rule 59 provides, in relevant part:

New Trials; Amendment of Judgments

(a) Grounds. A new trial may be granted to all or any of the parties and on all
or part of the issues (1) in an action in which there has been a trial by jury,
for any of the reasons for which new trials have heretofore been granted in
actions at law in the courts of the United States ....

arguments, that permit a trial judge to grant a new trial.

First, the trial court may grant a new trial where the verdict is against the clear weight of the evidence or is based on false evidence, or to prevent a miscarriage of justice. Silver Sage Partners, Ltd. v. City of Desert Hot Springs, 251 F.3d 814, 819 (9th Cir. 2001); Landes Const. Co., Inc. v. Royal Bank of Canada, 833 F.2d 1365, 1371 (9th Cir. 1987). "[A] district court may not grant a new trial simply because it would have arrived at a different verdict." Silver Sage Partners, 251 F.3d at 819 (citation omitted). Rather, before granting a new trial on these bases, the trial court, after having given full respect to the jury's determination, must be "left with the definite and firm conviction that a mistake has been committed [by the jury]." Landes Const. Co., 833 F.3d at 1371-72 (citations omitted). The Ninth Circuit has made clear that "[i]t is not the courts' place to substitute our evaluation for those of the jurors." Union Oil Co. Of California v. Terrible Herbst, Inc., 331 F3d. 735, 743 (9th Cir. 2003) (reversing trial court order granting new trial).

Second, the trial court may grant a new trial where there exists newly discovered evidence. The party seeking a new trial on the basis of newly discovered evidence must establish that "(1) the evidence was discovered after trial, (2) the exercise of due diligence would not have resulted in the evidence being

discovered at an earlier stage and (3) the newly discovered evidence is of such magnitude that production of it earlier would likely have changed the outcome of the case." Defenders of Wildlife, 204 F.3d 928-29.

Third, the trial court may grant a new trial where there is evidence that improper conduct by either an attorney or the court unfairly influenced the verdict. See, e.g., Wharf v. Burlington Northern Railroad Co., 60 F.3d 631, 637-38 (9th Cir. 1995) (granting new trial in case in which counsel was permitted to read to jury an untruthful stipulated fact). For a claim of judicial misconduct to survive, the misconduct must be reflected in the record as "actual bias" on the part of the trial court, or leave the "abiding impression that the jury perceived an appearance of advocacy or partiality" by the trial judge. Duckett v. Godinez, 67 F.3d 734, 740 (9th Cir. 1995)(citations omitted).

Rule 59(e) also permits the trial court to alter or amend its judgment. The decision whether to grant a motion to alter or amend the judgment also is left to the trial judge's discretion. Zimmerman v. City of Oakland, 255 F.3d 734, 737 (9th Cir. 2001). "Amendment or alteration is appropriate under Rule 59(e) if (1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3)

there is an intervening change in controlling law." <u>Zimmerman</u>, 255 F.3d at 740 (citing <u>School Dist. No. 1J, Multnomah County v. ACandS, Inc.</u>, 5 F.3d 1255, 1263 (9th Cir. 1993)).

### B.   **Rule 60 Standard**

Under Rule 60(b), the Court may relieve a party from a final judgment for any of the various reasons listed in the rule.  One of those reasons, upon which Mushrush relies, is where there is "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party[.]" Rule 60(b)(3).[7]  Mushrush also appears to rely on Rule 60(b)'s so-called "catch-all" provision for granting relief from a final judgment, *i.e.*, "any other reason justifying relief from the operation of the judgment."  Rule 60(b)(6).

Whether to grant relief under Rule 60(b) is left to the trial judge's discretion.  <u>De Saracho v. Custom Food Machinery, Inc.</u>, 206 F.3d 874, 880 (9th Cir. 2000).  "The party seeking relief from the judgment bears the burden of demonstrating that the prerequisites for such relief are satisfied."  Steven Baicker-McKee, et al., *Federal Civil Rules Handbook*, p. 926 (2004 ed.)(citing <u>McCurry ex rel. Turner v. Adventist Health</u>

---

[7]Mushrush refers in his Opening Brief only generally to Rule 60 instead of to the rule's specific subsections.  *Mushrush's Opening Brief at 1, 4*.  He generally refers to "fraud, misrepresentation or misconduct of an adverse party" in his Opening Brief, *Mushrush's Opening Brief at 4*, which leads the Court to believe that he relies on Rule 60(b)(3).  Although Martel noted this vagueness in its response brief, *Martel's Opposition Brief at 3*, Mushrush did not provide in his Reply Brief any more specific information with respect to the portion of Rule 60 upon which he relies.

<u>Sys./Sunbelt, Inc.</u>, 298 F.3d 586, 592 (6th Cir. 2002)).

To prevail on a Rule 60(b)(3) motion, "the moving party must prove by clear and convincing evidence that the verdict was obtained through fraud, misrepresentation, or other misconduct and the conduct complained of prevented the losing party from fully and fairly presenting [its case]." <u>De Saracho</u>, 206 F.3d at 880 (citations omitted); <u>see also</u> <u>Casey v. Albertson's Inc.</u>, 362 F.3d 1254, 1259-60 (9th Cir. 2004). "Rule 60(b)(3) 'is aimed at judgments which were unfairly obtained, not at those which are factually incorrect.'" <u>De Saracho</u>, 206 F.3d at 880 (citation omitted).

A party may obtain relief under Rule 60(b)(6)'s "catch-all" provision if such relief will further the interests of justice, and if the basis for relief is not already covered by Rule 60(b)(1) through (5). <u>Lyon v. Agusta S.P.A.</u>, 252 F.3d 1078, 1088 (9th Cir. 2001) (noting that the subsections of Rule 60(b) are "mutually exclusive"). This provision is used "sparingly" to prevent manifest injustice where "extraordinary circumstances" prevented a party from taking action in a timely manner to prevent or correct an erroneous judgment. <u>United States v. State of Washington</u>, 98 F.3d 1159, 1163 (9th Cir. 1996).

C.   <u>**Analysis of Mushrush's 13 Supporting Arguments**</u>

It is not entirely clear from Mushrush's briefs precisely which parts of Rules 59 and 60 he relies upon in advancing his 13

arguments in support of his combined motion.  The Court has attempted, in addressing Mushrush's arguments *seriatim*, to address Mushrush's arguments in the context of the rule to which each argument most likely relates.  For all of the reasons that follow, the Court concludes that Mushrush's combined motion fails.

       1.   **Argument that Jury's Conclusion that Martel Was Not Negligent Was Against Weight of Evidence**

Having considered Mushrush's arguments, the Court concludes that the Jury's determination that Martel was not negligent was not against the "clear weight" of the evidence presented at trial.  Silver Sage Partners, 251 F.3d at 819.  Further, the Court concludes that a "miscarriage of justice" will not result if a new trial is not ordered.  Id.

From the testimony of Devon Wille, Dan Weaver and Kendall Switzer, it was reasonable for the Jury to conclude that Martel had no knowledge that Mushrush and Charlton Pino's crew were working on scaffolding in the middle of the night.  Indeed, project superintendent Weaver testified that he did not give Pino and his crew permission to work at the construction site at night, nor did they ever ask permission to work at the site at night.

With respect to Mushrush's argument that Martel pressured Mushrush and Pino's crew to work in the middle of the night because the project was behind schedule, the evidence did not

conclusively support this contention.  Again, Weaver testified
that he had no knowledge that Mushrush and Pino's crew were
working at night, and that he never gave, nor was he ever asked
to give, permission for them to work at night.  Further, neither
Pino nor any of his crew testified that they were working at
night because Martel was pressuring them to do so.  Also, Wille
testified that Mushrush and Pino's crew were performing their
portion of the work during the "float" period built into the
project schedule.  It would have been reasonable for the Jury to
conclude from this testimony that Martel was not so drastically
behind schedule on the project that it pressured Mushrush and
Pino's crew to work in the middle of the night.

      With respect to Mushrush's arguments regarding Martel's
safety meetings, the evidence showed that the safety meeting
minutes did not show members of Pino's crew in attendance because
at least some of the meetings occurred prior to Pino's crew
beginning work on the project.  The evidence also showed that
subcontractors, such as Pino and his crew, were not required to
attend the safety meetings.

      The Court concludes that it was reasonable for the Jury to
determine that Martel was not negligent.  Again, even assuming,
for the sake of argument, that the Court would have arrived at a
different verdict, it may not grant a new trial on this basis.
Silver Sage Partners, 251 F.3d at 819 (citation omitted).  Also,

11

in light of the foregoing evidence, the Court cannot say that a "miscarriage of justice" will occur if a new trial is not ordered.

       **2.**    **Argument that Martel Knew of Repeated Scaffolding Policy and OSHA Violations by Charlton Pino, But Failed to Correct Such Violations**

Despite Mushrush's argument, the evidence at trial did not establish conclusively that Martel knew Pino repeatedly violated Martel scaffolding policy and OSHA regulations, but nevertheless failed to correct such violations.  Mushrush relies in his Reply Brief on various photographs admitted into evidence at trial as proof of the violations and of Martel's knowledge of them.  However, the evidence at trial was not conclusive with respect to the status of the scaffolding in the photographs.  Further, it was not clear from the evidence how much of the photographed scaffolding was in any way related to Mushrush's fall.  Although Mushrush offered the photographs to try to demonstrate his belief that Martel repeatedly allowed improper scaffolding use on the project, it was not unreasonable for the Jury, considering several witnesses' explanations of the contents of the photographs, to conclude otherwise.

As Martel notes, Jeremy Miesaloski, who was working on the scaffolding from which Mushrush fell at the time he fell, provided testimony inconsistent with Mushrush's argument. Miesaloski testified that project superintendent Weaver had

12

yelled at Pino when he noticed Pino's scaffolding was not set up properly near the time Pino initially arrived at the site. From this evidence, it was reasonable for the Jury to conclude that Martel took action to correct violations of scaffolding policies of which it was aware. Again, the Court may not grant a new trial even if it would have interpreted the evidence differently. Silver Sage Partners, 251 F.3d at 819 (citation omitted).

### 3. Argument that Martel Refused to Investigate the Accident to Avoid Liability

Mushrush contends that Martel was required by its own accident investigation policy to investigate the accident, but failed to do so and thus deprived Mushrush of evidence to prove his claims. *Mushrush's Opening Brief at 6*. He argues that Martel should be estopped from benefitting by its own failure to investigate.

Mushrush also contends that (1) there were actually only two versions of the accident instead of three as Martel argued, *id.*; (2) Martel withheld from Mushrush for more than six years its safety policies, *id. at 7*; and (3) Martel engaged in spoliation of evidence, *Mushrush's Reply Brief at 8-9*.

Having considered these arguments in the context of all of the evidence of record, the Court concludes that Mushrush is not entitled to a new trial, amendment of the judgment or relief from the judgment. First, the accident was investigated. Laurie Weidlich-Kuntz from the State Fund testified regarding her

13

investigation of Mushrush's accident.  Although Martel did not
independently investigate the accident, Mushrush was allowed to
present, and did present, evidence of Martel's failure.  Mushrush
elicited from Weaver testimony that Switzer would have conducted
any Martel investigation, and from Switzer testimony that he did
not conduct an investigation.  However, Martel also introduced
evidence that it initially had little information about the
accident because it occurred in the middle of the night.  It was
the Jury's function to determine the significance of this
evidence in the context of all of the evidence presented.  In
doing so, it was not unreasonable for the Jury to attribute to
Martel's failure to investigate a less nefarious explanation than
that now urged by Mushrush.

Second, as Martel notes in its response brief, Mushrush's
claim that he advanced two rather than three explanations for the
accident ignores the statements from Miesaloski and Pino in the
State Fund investigation that Mushrush stepped between the
scaffolding and the building when he fell.  It was not improper
for Martel to present to the Jury evidence of the three versions
of the accident, nor was it improper, as Mushrush seems to
suggest, for Martel to attack Miesaloski's credibility in light
of his admission during trial testimony that he lied to the State
Fund investigator about how the accident occurred.  Further,
Mushrush did not object to Martel's counsel's reference in

14

closing arguments to three versions of the accident.

Third, Mushrush argues that Martel withheld its safety policy from Mushrush for more than six years.  The Court addresses that argument *infra* at pages 21-22.

Fourth, Mushrush argues that Martel's failure to conduct an independent investigation of the accident amounts to the spoliation of evidence.  This argument fails because Mushrush has offered no evidence, "clear and convincing" or otherwise, to support his claim, and because Mushrush raised this issue for the first time in his reply brief.

A party has engaged in spoliation of evidence as a matter of law only if it had "some notice that [the evidence was] potentially relevant" to the litigation before the evidence was destroyed.  United States v. Kitsap Physicians Service, 314 F.3d 995, 1001 (9th Cir. 2002)(citation omitted).  Here, Mushrush has failed to point to any evidence that Martel allegedly destroyed. He has suggested that Martel's failure to investigate the accident amounts to spoliation of evidence, but this bare argument is not persuasive.  As noted *supra*, a State Fund investigator investigated the accident, and the fruits of the investigation were available to Mushrush.  Also, Martel has offered credible reasons for its failure to investigate the accident, *i.e.*, the State Fund's investigation and Martel's lack of knowledge of the accident initially because it occurred during

15

the middle of the night.

Further, the Court is not persuaded by Mushrush's argument that "it was obvious [to Martel after the accident] that Dan Mushrush was going to have significant damages, and had no legal or factual ability to conduct a timely investigation on his own behalf." *Mushrush's Reply Brief at 8*. This argument, which Mushrush apparently advances to suggest that Martel had notice that there would be litigation surrounding Mushrush's accident, is equally unsupported by any evidence. Again, as already noted, Martel has offered credible reasons for its failure to investigate. Also, Mushrush has presented no evidence that Martel knew or should have known that he would have no legal or factual ability to conduct a timely investigation on his own behalf.

**4.  Argument that Court Erred in Refusing to Allow Mushrush to Set Up Scaffolding in Courtroom to Help Witnesses Explain Their Testimony to Jury**

Trial courts have broad discretion to regulate use of demonstrative exhibits. Rogers v. Raymark Industries, Inc., 922 F.2d 1426, 1429 (9th Cir. 1991); United States v. Malcolm, 475 F.2d 420, 427 (9th Cir. 1973)(trial court has discretion to "control[ ] the orderly presentation of the evidence ... and prevent[ ] undue repetition of testimony."); Fed. R. Evid. 611(a); United States v. Johnson, 54 F.3d 1150, 1158 (4th Cir. 1995). The trial judge may exclude demonstrative evidence "if

16

its probative value is substantially outweighed by the danger of
unfair prejudice, confusion of the issues, or misleading the
jury, or by considerations of undue delay, waste of time, or
needless presentation of cumulative evidence."  Fed. R. Evid.
403.

In his pretrial motion in limine (Court's Doc. No. 105),
Mushrush stated the following with respect to demonstrative
scaffolding:

> While Plaintiff does not expect a *carte blanche* ruling
> on demonstrative evidence without having seen the same,
> counsel wants to alert both the Court and counsel for
> Martel that the following demonstrative exhibits are
> expected to be used in this case:
>
>> a) exemplar scaffolding, walkboards,
>> outriggers, footings, braces and pins; ...

*Pltf's Mtn. in Limine and Supporting Memo. at 3* (emphasis in
original).

At trial, the Court denied Mushrush's request to erect
scaffolding in the courtroom to demonstrate to the Jury the
structure from which Mushrush fell.  The Court did allow,
however, introduction of numerous photographs depicting
scaffolding, including photographs of the actual scaffolding from
which Mushrush fell.  <u>See</u>, <u>e.g.</u>, Pltf's Exhibits 10, 11-A, 18, 20
and 21, and Deft's Exhibit 205.  Further, several witnesses,
including Mushrush, Pino, Miesaloski, Weaver, Wille and Switzer,
testified about scaffolding and its construction, use and
specifications.  In this Court's opinion, the photographic

evidence, coupled with the extensive testimony about scaffolding, was abundantly sufficient to make the case understandable to the Jury.  To allow Mushrush to erect demonstrative scaffolding in the courtroom during the trial proceedings would have run counter Fed. R. Evid. 403's purpose of avoiding juror confusion, wasted time and cumulative evidence.

It was clear to the Court that the Jury was sufficiently familiar with scaffolding through the presentation of numerous photographs and witness testimony to render a fair decision.  The Court's decision to deny Mushrush's request to erect demonstrative scaffolding was not inconsistent with substantial justice.

5.     **Argument that Cross-examination of Dr. Dulaney Regarding Mushrush's Time-of-Injury Pay Was Prejudicial Where Martel Had Already Admitted that Mushrush Was Making $19.00 an Hour at Time of Injury**

The Court is not persuaded, based on this argument, that Mushrush is entitled to a new trial to prevent a miscarriage of justice, or that he should be relieved from the final judgment either because he was prevented from fully and fairly presenting his case or because such relief would further the interests of justice.  While Mushrush is correct that Martel admitted during discovery that Mushrush made $19.00 an hour at the time of the accident, see *Mushrush's Reply Brief at Ex. 1, p. 5*, and Martel is clearly incorrect in now maintaining that it did not make that

18

admission, the fact of this discrepancy was *de minimis* in the overall context of the trial.

Mushrush concedes that he availed himself, both during his case-in-chief and closing argument, of the opportunity to explain the discrepancy to the Jury.  Although he claims prejudice at having to allocate time to do so that could have been better spent convincing the Jury of Martel's negligence for the fall, the record reflects, and the Court is convinced, that Mushrush had ample time to do both.

###### 6. <u>Argument that Martel's Reference to Three Versions of How the Accident Happened Was Improper</u>

The Court has already addressed this issue *supra* at pages 13-14, in addressing Mushrush's argument number 3.  For the reasons already stated, Mushrush's combined motion fails.

###### 7. <u>Argument that Judge Cebull's Failure to Grant Mushrush's Second Motion for Partial Summary Judgment Based on Local Rule 7.2 Was Error and Prejudicial to Mushrush</u>

The Court will deny Mushrush's combined motion to the extent it is based on this argument for two reasons.  First, as the Court has noted *supra* in footnote 5, Mushrush filed his second Motion for Summary Judgment on June 23, 2005.  Judge Cebull denied the motion on July 29, 2005, after determining that it was "in reality nothing more than a motion for reconsideration" of Mushrush's first motion for summary judgment, which Mushrush withdrew after conceding the existence of some genuine issues of

19

material fact.  Judge Cebull concluded that the second summary judgment motion "cover[ed] the same ground" as the first summary judgment motion that Mushrush withdrew.  Having reviewed the record, the Court in not inclined to disagree with or to second-guess Judge Cebull's conclusion.

Second, Ninth Circuit authority discourages post-trial review of previously denied summary judgment motions.  The Ninth Circuit has noted:

> An appellate court will not review a denial of summary judgment after there has been a trial on the merits and an adverse jury verdict.  At that stage, the propriety of the district court's denial of summary judgment motion is an "academic question."

De Saracho, 206 F.3d at 877-88 (citations omitted).

The Jury has rendered its decision in this case making Mushrush's summary judgment motion an "academic question."  The Jury resolved the factual issues at trial in Martel's favor.

Also, the Court finds unpersuasive Mushrush's argument that Judge Cebull's ruling caused him to "re-work his whole litigation strategy at the eleventh hour of the scheduling order" because he expected to prevail on the liability portion of the case through his summary judgment motion.  As noted, Judge Cebull ruled on the motion on July 29, 2005.  Trial did not commence until more than two months later, on October 7, 2005.  Mushrush did not request a continuance, and has not demonstrated how he was unfairly prejudiced.

**8.   Argument that Martel's Production of Its Employee Manual and Safety Manual in August of 2005 Was Unfairly Prejudicial to Mushrush**

Martel notes, and Mushrush does not dispute, that it produced the subject documents to Mushrush "a month before trial" as a supplemental response to Mushrush's previous discovery requests.  *Martel's Opposition Brief at 5*.  Mushrush, in seeking production of the documents through a motion to compel, sought neither sanctions nor a continuance of the trial date.  Judge Cebull denied the motion to compel on August 5, 2005, indicating that the motion was moot because Martel had agreed to produce the documents.

Mushrush used the documents often at trial during examination of witnesses and during closing.  Again, he did not request a continuance of the trial date.  He now argues that to do so would have caused him to have to "re-depos[e] witnesses, re-disclos[e] (and pay[] for) expert testimony, fil[e] additional motions to re-consider previously denied motions and, possibly delay[] the case for many more months or years to come."  *Mushrush's Reply Brief at 14*.[8]

The Court concludes that Mushrush made a conscious choice to proceed with trial, and that he cannot now claim unfair prejudice

---

[8]The Court notes that if it were to grant the relief Mushrush now seeks, he would have to do the same things.  The interests of efficiency and cost-effectiveness would have been better served had Mushrush moved, before embarking on a week-long jury trial, for a continuance to accomplish these tasks rather than asking for that to occur now.

because he believes he was unprepared because he received the documents too late.  Mushrush's remedy was to object before the start of trial and to request additional time to prepare. Instead, he chose to gamble by waiting to see whether the outcome of trial would be favorable to him.  Such a conscious choice does not give rise to a basis for a new trial or any of the other relief Mushrush seeks.  See, e.g., Paul Revere Variable Annuity Ins. Co. v. Zang, 248 F.3d 1, 5 (1st Cir. 2001) (decision to challenge motion to compel arbitration on merits rather than dismiss only defendant with standing to compel arbitration was calculated risk that did not compel relief under Rule 60(b)(6)); United States v. Boch Oldsmobile, Inc., 909 F.2d 657, 662 (1st Cir. 1990)(Rule 60(b) cannot relieve a litigant for improvident strategic choices).  In this Court's opinion, Mushrush was not deprived of a full and fair opportunity to present his case, and he has not pointed to sufficient evidence to demonstrate that Martel engaged in misconduct or that there a miscarriage of justice.

9.   **Argument that Martel's Counsel's Reference in Closing Argument to Absence of Other OSHA Violations Was False and Prejudicial**

Parties seeking relief after trial for alleged misconduct during trial face a "higher threshold" for obtaining such relief where they failed to object to the alleged misconduct during trial.  See, e.g., Settlegood v. Portland Pub. Sch., 371 F.3d

22

503, 517 (9th Cir. 2004) (applying the higher threshold of review in an appeal of the grant of a Rule 50 motion)(citing <u>Kaiser Steele Corp. v. Frank Coluccio Constr. Co.</u>, 785 F.2d 656, 658 (9th Cir. 1986)).  Although in <u>Settlegood</u> the Ninth Circuit was addressing an appeal in the context of a Rule 50 motion, the Court finds its guidance instructive here.  The court in <u>Settlegood</u> noted:

> A higher threshold is necessary for two reasons: "First, raising an objection after the closing argument and before the jury begins deliberations 'permit[s] the judge to examine the alleged prejudice and to admonish ... counsel or issue a curative instruction, if warranted.'"  <u>Hemmings v. Tidyman's Inc.</u>, 285 F.3d 1174, 1193 (9th Cir.2002) (quoting <u>Kaiser</u>, 785 F.2d at 658). Second, "allowing a party to wait to raise the error until after the negative verdict encourages that party to sit silent in the face of claimed error."  <u>Id</u>.

<u>Settlegood</u>, 371 F.3d at 517.

Here, Mushrush did not object at trial to the argument of Martel's counsel during his closing that there was no evidence of any OSHA violations.  He had the opportunity to do so at the time of the alleged misconduct, but failed to take it.  Also, Mushrush had the opportunity to argue in response to the substance of the allegedly improper argument by Martel during his closing rebuttal.  On this record, the Court cannot conclude either that Mushrush was deprived of a full and fair opportunity to present his case, or that there was a miscarriage of justice.

> **10.** **Argument that It Was a Violation of Court's Order Excluding Witnesses and Prejudicial to Mushrush When James Kommers, Charlton Pino's Counsel, Was**

23

## **Present During Another Witness' Testimony**

Mushrush's argument is unpersuasive for at least four reasons.  First, Mushrush's counsel states that he was aware of Kommers' presence in the courtroom during trial and witnessed Kommers "coaching" Pino in the hallway prior to Pino's testimony.  However, he failed, until now, to alert the Court and he did not object despite having had the opportunity to do so.  It was impermissible for him to "sit silent in the face of claimed error." Settlegood, 371 F.3d at 517 (citation omitted).  The Court concludes that Mushrush has not met the threshold requirement for obtaining relief on this issue.  Id.   Second, Mushrush has offered no actual proof of the misconduct he has alleged.  Rather, Mushrush's counsel only has made allegations in his argument to the Court.  Unsworn argument of counsel is not proof of a fact.

Third, Mushrush has failed to show how the alleged misconduct at issue is attributable to Martel or its counsel.  Even if his allegation is true, he has not shown that Martel or its counsel were involved in any way or even aware of the facts giving rise to the allegation.

Fourth, Mushrush has failed to demonstrate prejudice as a result of the alleged misconduct.  Even if the alleged misconduct were true, the Jury decided the case on the issue of whether Martel was liable.  The Jury did not reach the issue of damages.

24

11. **Argument that Martel Was Negligent as a Matter of Law**

For the reasons stated *supra* in addressing Mushrush's first, third, sixth and seventh arguments, the Court concludes that Mushrush is not entitled to the relief he seeks based on this argument.

Also, to the extent Mushrush argues that no blame for the fall can be attributed to him, this position is inconsistent with his position taken in the Final Pretrial Order, in which he acknowledged "some responsibility for his injuries," and in his closing argument.  It may have been his trial strategy to admit some liability in an attempt to foreclose Martel from effectively arguing comparative negligence, but the failure of a trial strategy does not provide the basis for the relief Mushrush seeks.  See Paul Revere Variable Annuity Ins. Co., 248 F.3d at 5.

12. **Argument that Mushrush Was Not Negligent Because He Was Doing Inherently Dangerous Work As Directed By His Supervisior, and Martel Had Fiduciary Duty to Ensure Work Was Being Performed Safely**

For the reasons stated *supra* in addressing Mushrush's first, third, sixth, seventh and eleventh arguments, the Court concludes that Mushrush is not entitled to the relief he seeks based on this argument.  Also, this argument is unpersuasive because the Jury did not reach the issue of Mushrush's negligence, but rather ended its inquiry after determining that Martel was not negligent.

25

13.   **Argument that Court Deprived Mushrush of Fair Trial and Due Process of Law By Limiting Each Party to Thirty Minutes of Voir Dire By Counsel**

Rule 47 governs the selection of jurors in federal court. Rule 47(a) provides:

> The court may permit the parties or their attorneys to conduct the examination of prospective jurors or may itself conduct the examination. In the latter event, the court shall permit the parties or their attorneys to supplement the examination by such further inquiry as it deems proper or shall itself submit to the prospective jurors such additional questions of the parties or their attorneys as it deems proper.

Under this rule, the trial judge has broad discretion in how to conduct voir dire. Paine v. City of Lompoc, 160 F.3d 562, 564 (9th Cir. 1998); Darbin v. Nourse, 664 F.2d 1109, 1113-14 (9th Cir. 1981). In discussing voir dire, the Ninth Circuit has stated:

> The principal purpose of voir dire is to probe each prospective juror's state of mind to enable the trial judge to determine actual bias and to allow counsel to assess suspected bias or prejudice. Thus, a voir dire examination must be conducted in a manner that allows the parties to effectively and intelligently exercise their right to peremptory challenges and challenges for cause.
>
> *       *       *
>
> While the peremptory challenge and the challenge for cause serve the same end, that of securing an impartial jury, they offer the parties two distinct, although complementary, methods of challenging biased jurors. Both types of challenges are important to the effort to obtain a fair tribunal. The challenge for cause is narrowly confined to instances in which threats to impartiality are admitted or presumed from the relationships, pecuniary interests, or clear biases of a prospective juror. The peremptory challenge is considerably more extensive in scope. It serves

26

to remove jurors who, in the opinion of counsel, have
unacknowledged or unconscious bias. "While challenges for
cause permit rejection of jurors on a narrowly specified,
provable and legally cognizable basis of partiality, the
peremptory permits rejection for a real or imagined
partiality that is less easily designated or demonstrable."
The two types of challenges, in combination, are designed to
achieve two important objectives: first, that when a jury is
finally chosen it will perform its duties in a fair and
unbiased manner; and second, that the parties and the public
will have confidence in the impartiality and integrity of
the jury.

The trial court must conduct voir dire in a manner that
permits the informed exercise of both the peremptory
challenge and the challenge for cause. Questions which
merely invite an express admission or denial of prejudice
are, of course, a necessary part of voir dire because they
may elicit responses which will allow the parties to
challenge jurors for cause. However, such general inquiries
often fail to reveal relationships or interests of the
jurors which may cause unconscious or unacknowledged bias.
For this reason, a more probing inquiry is usually
necessary. In some lawsuits the nature of the case itself
suggests that a more specific inquiry is required with
respect to particular matters. The nature of the controversy
or the relationship and identity of the parties may involve
matters on which a number of citizens may be expected to
have biases or strong inclinations. If an inquiry requested
by counsel is directed toward an important aspect of the
litigation about which members of the public may be expected
to have strong feelings or prejudices, the court should
adequately inquire into the subject on voir dire. The court
must not be niggardly or grudging in accepting counsels'
requests that such inquiries be made.

The court need not use the question in the precise form
suggested by counsel. Nor need a particular question be
asked if the substance of the inquiry is covered in another
question, differently phrased, or in the voir dire as a
whole. Certainly the trial court need not conduct an inquiry
which is cumulative.

Darbin, 664 F.2d at 1113 (citations, internal quotations and

footnotes omitted).

Applying the foregoing standard to the instant case, the

27

Court concludes that it did not err in placing a thirty-minute limit per side to conduct voir dire.  Further, the Court is satisfied that the voir dire conducted was adequate in allowing the parties to exercise their challenges effectively and intelligently.

First, the Court permitted counsel to submit written questions for the Court's review and possible use during the Court's voir dire.  The Court used some of the questions, either in their original form or in a modified version, in addition to its own questions, in conducting the initial voir dire.  The time that the Court used in questioning prospective jurors did not count against the time allotted to each party, and the parties were able to use the information gathered during the Court's examination of prospective jurors in assessing the existence of any biases or strong inclinations.

Second, the Court permitted each side to conduct thirty minutes of voir dire.  The Court did not discern any inability by either party to further pursue a particular line of inquiry, nor did Mushrush alert the Court during voir dire of a significant need to do so.  At the end of voir dire, the Court was satisfied that the parties had the opportunity to select an impartial jury.

## III. **Conclusion**

For the foregoing reasons, the Court concludes that Mushrush is not entitled to the relief he seeks in his combined motion.

28

Accordingly,

**IT IS ORDERED** that Mushrush's Motion to Amend Judgment and for New Trial on the Issue of Damages (Court's Doc. No. 161) is **DENIED.**

DATED this 7th day of December, 2005.

                              /s/ Carolyn S. Ostby
                              Carolyn S. Ostby
                              United States Magistrate Judge